961 P.2d 188 (1998)
1998 OK 45
Eleanor M. PURCELL, Appellee, Counter-Appellant,
v.
SANTA FE MINERALS, INC., a corporation, Appellant, Counter-Appellee.
No. 82962.
Supreme Court of Oklahoma.
June 2, 1998.
As Corrected June 15, 1998.
William K. Elias, Michael J. Massad, of Elias, Books, Brown, Peterson & Massad and Frank H. McGregor, Oklahoma City, for Eleanor Purcell.
Gary W. Davis, Mark D. Christiansen, Paul D. Trimble, Oklahoma City, and William H. Boyles of Gibson, Dunn & Crutcher, Dallas, TX, for Santa Fe Minerals, Inc.
*189 Joseph W. Morris, Teresa B. Adwan, M. Benjamin Singletary, Gable & Gotwals, Inc., Tulsa, and Brenton B. Moore, Tulsa, for Amicus Curiae Oklahoma Division of the Mid-Continent Oil & Gas Association.
SUMMERS, Vice Chief Justice.
¶ 1 The only question remaining on appeal for the Court is to determine which statute of limitations controls Plaintiff/lessor's claim for statutory pre-judgment interest on her recovery against the lessee for underpaid royalties. We conclude that it is the five-year statute governing claims on written contracts, rather than the three-year version applicable to liability created by statute.
¶ 2 Eleanor Purcell filed suit, claiming that she was lessor of certain mineral interests in Canadian County, and that Santa Fe Minerals, Inc. (Santa Fe), as lessee had underpaid her in making its royalty payments. She also sought prejudgment and post-judgment interest. By way of partial summary judgment Purcell was awarded the amount of $317,504.04, with an additional amount for interest. Santa Fe appealed, arguing that it correctly deducted certain costs from the royalty payments, and that the trial court erroneously applied a five-year statute of limitations. Purcell counter-appealed, arguing that she was entitled to interest at a 12% rate instead of the 6% awarded by the trial court. The Court of Civil Appeals affirmed the trial court's disallowance of deductions for post-production costs, affirmed the allowance of statutory prejudgment interest, and affirmed the applicability of a five-year statute of limitations. It reversed the trial court's use of 6% as interest and remanded, directing that it be calculated at 12%.

I.
¶ 3 The primary issue in this appeal is whether the language of the lease allowed Santa Fe Minerals, Inc., to deduct certain expenses from the royalty payments made to Purcell. We recently addressed this issue in our answer to a question certified to this Court from the United States Court of Appeals for the Tenth Circuit, Mittelstaedt v. Santa Fe Minerals, Inc., 1998 OK 7, 954 P.2d 1203, (petition for rehearing not filed). We said:
In sum, a royalty interest may bear post-production costs of transporting, blending, compression, and dehydration, when the costs are reasonable, when actual royalty revenues increase in proportion to the costs assessed against the royalty interest, when the costs are associated with transforming an already marketable product into an enhanced product, and when the lessee meets its burden of showing these facts.
1998 OK 7, at ¶ 30, 954 P.2d 1203.
¶ 4 We ordered the parties here to brief the effect of Mittelstaedt upon this appeal. Both agree that it controls, and both state that the matter should be remanded for further proceedings in the trial court. Plaintiff/Purcell notes that she "has not been afforded an opportunity to investigate and/or challenge Santa Fe's allegations in the context of Mittelstaedt." She further states that "[t]he Court should remand the District Court's ruling on the deduction issue with instructions for further proceedings in accordance with Mittelstaedt." Defendant/Santa Fe is in agreement, and states that "Santa Fe should be given an opportunity to supplement the factual record in light of the Mittelstaedt decision to aid the District Court in issuing a new ruling in this case." We accordingly reverse that part of the judgment of the District Court adjudicating Purcell's claim to unpaid royalty income, and remand for further proceedings in light of this Court's opinion in Mittelstaedt. Since the law on the primary issue in this appeal has been decided the motion for oral argument is denied.

II.
¶ 5 When Santa Fe sought certiorari to review the opinion of the Court of Civil Appeals it raised two issues: (1) how to calculate Purcell's royalty (the Mittelstaedt issue) and (2) the proper statute of limitations. The Court of Civil Appeals had determined that the applicable interest rate was 12% instead of the 6% awarded by the trial court. That decision by the appellate court is not *190 before us on certiorari, and thus becomes a part of the law of this case. Lockhart v. Loosen, 1997 OK 103, n. 1, 943 P.2d 1074, 1077; Nichols v. Mid-Continent Pipe Line Co., 1996 OK 118, ¶¶ 23-24, 933 P.2d 272, 281; Barnett v. Barnett, 1996 OK 60, ¶ 13, 917 P.2d 473, 477.[1] So all left for us is to examine the arguments on the statute of limitations as presented by the briefs filed on appeal and on certiorari.[2]
¶ 6 Defendant Santa Fe argued in the trial court that Plaintiff's claim for unpaid royalties was subject to a five-year limitations period. The limitations period is five years for an action brought upon a contract, agreement, or promise in writing. 12 O.S. 1991 § 95 (First). This provision applies to breach of an oil and gas lease. Indian Territory Illuminating Oil Co. v. Rosamond, 190 Okla. 46, 120 P.2d 349, 354 (1942). Plaintiff's claim is simply an allegation that the Defendant breached the leases. Plaintiff did not assert tolling nor any other doctrine to avoid the application of the five-year limitations period.
¶ 7 So, at this point it is undisputed that Purcell's claims for underpaid royalty are limited by the five-year limitation statute § 95(First), and that she is entitled to prejudgment interest at 12% as per § 540. The only question remaining is whether she is entitled to the 12% interest on her entire viable claim (back five years), or for some lesser period of time.
¶ 8 Santa Fe argued that the claim for 12% interest was not a contractual claim, but based upon a liability created by a statute, and that a three-year limitations period applied, citing, 12 O.S. § 95 (Second). Then on certiorari Santa Fe suggested that a one-year limitations period under 12 O.S. § 95 (Fourth) was consistent with the analysis made by the Court of Civil Appeals in this case.[3] Plaintiff argued that the 12% interest was a contractual claim, and that the five-year limitations period applicable to unpaid royalties also applied to the interest.
¶ 9 We must first note that the statute providing for the 12% rate, 52 O.S. 1991 § 540 (now § 570.10), is now a part of the Production Revenue Standards Act, 52 O.S.Supp. 1992 §§ 570.1 -570.15. That Act provides for a five-year limitations period for actions based upon the Act.
D. For purposes of the Production Revenue Standards Act, the statute of limitations on actions brought pursuant to the provisions of the Production Revenue Standards Act shall be five (5) years from the date the cause of action shall have accrued, provided however, nothing shall create, limit or expand any statute of limitations applicable to production occurring prior to September 1, 1992.
52 O.S.Supp.1992 § 570.14(D).
This statute also shows that the limitations period does not apply to production occurring prior to September 1, 1992. The case before us involves production prior to this date, and the limitations period now provided by § 570.14 does not apply to this controversy.
*191 ¶ 10 Santa Fe argues that the enactment of this statute, by itself, indicates that prior to its enactment a three-year limitation period applied. Santa Fe equates legislative silence during the period preceding § 570.14 on the issue of limitations with a legislative recognition that the Legislature was changing the law by enacting § 570.14. It is true that the Legislature is not presumed to perform vain and useless acts. Hill v. Board of Education, 1997 OK 111, ¶ 12, 944 P.2d 930, 933; Bryant v. Commissioner of the Department of Public Safety, 1996 OK 134, ¶ 11, 937 P.2d 496, 500. But the legislative voice may also be used to clarify existing law, as opposed to altering its substance. Texas County Irr. and Water Resources Ass'n. v. Oklahoma Water Resources Bd., 1990 OK 121, ¶ 6, 803 P.2d 1119, 1122. Thus, Santa Fe's argument is not necessarily correct.
¶ 11 The three limitation periods of 12 O.S.1991 § 95 examined by the trial and appellate courts are as follows:[4]
§ 95. Limitation of Other Actions.
Civil actions other than for the recovery of real property can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:
First. Within five (5) years: An action upon any contract, agreement, or promise in writing;
Second. Within three (3) years: An action upon a contract express or implied not in writing; an action upon a liability created by statute other than a forfeiture or penalty; and an action on a foreign judgment; ...
Fourth. Within one (1) year: An action for libel, slander, assault, battery, malicious prosecution, or false imprisonment, an action upon a statute for penalty or forfeiture, except where the statute imposing it prescribes a different limitation;
The issue is how to characterize, for the purpose of limitations, a claim for the 12% interest authorized by § 540 (now § 570.10). Is it part of a contractual cause action based upon a breached lease, or is the claim one for interest based upon a liability created by statute, or is it an action based on a statute for a penalty?
¶ 12 Suit was filed February 26, 1992 as an action seeking a declaratory judgment, breach of contract and accounting for unpaid royalties. Interest was sought pursuant to 52 O.S.1991 § 540. On February 26, 1987, the version of § 540 provided in part as follows:
Any said first purchasers or owner of the right to drill and produce substituted for the first purchaser as provided herein that violates this act shall be liable to the persons legally entitled to the proceeds from production for the unpaid amount of such proceeds with interest thereon at the rate of twelve percent (12%) per annum, calculated from date of first sale.
52 O.S.Supp.1987 § 540(B), (emphasis added).
Then effective July 1, 1989 this part of the statute read as follows:
Any said first purchasers or owner of the right to drill and produce substituted for the first purchaser as provided herein that violates this section shall be liable to the persons legally entitled to the proceeds from production for the unpaid amount of such proceeds with interest thereon at the rate of twelve percent (12%) per annum, to be compounded annually, calculated from date of first sale.
52 O.S.Supp.1989 § 540(D), (emphasis added).
This language was in effect as 52 O.S.1991 § 540(D) when suit was filed in February 1992.[5] The language refers to one who "violates this act" and one who "violates this section" as being liable for the 12% interest. Section 540 also states that:

*192 C. The district court for the county in which the oil or gas well is located shall have jurisdiction over all proceedings brought pursuant to this act. The prevailing party in any proceeding brought pursuant to this act shall be entitled to recover any court costs and reasonable attorney's fees.
52 O.S.Supp.1987 § 540(C), (emphasis added).
The statute refers to proceedings brought pursuant to the act. Santa Fe relies upon the statutory language, and argues that its liability to pay interest arises from the statute. However, merely examining the statutory language is insufficient to determine if the liability arises from a statute. We must determine whether the liability arises from contract, or from the common law and is codified by the statute.
¶ 13 In Smith Engineering Works v. Custer, 194 Okla. 318, 151 P.2d 404, 407 (1944), we explained that "liability created by statute" is a liability that would not exist but for the statute. We applied this definition in Hough v. Hough, 206 Okla. 179, 242 P.2d 162 (1952), where we explained that a duty to pay child support arose from the common law, and we declined to apply the three-year limitations period for liabilities created by statute.
¶ 14 In County of San Diego v. Sanfax Corp., 19 Cal.3d 862, 140 Cal.Rptr. 638, 568 P.2d 363 (1977), that court explained that a similar three-year "statutory" statute of limitations is used where the statute at issue, as opposed to contract or tort law, serves as the source of the court's decision on the merits. Id. 140 Cal.Rptr. 638, 568 P.2d at 370. On the other hand, "contract" statutes of limitations are commonly applied in cases where a contract is the source of the substantive rights or duties of the litigants. Id. One court has stated that a "statutory" statute of limitations will not apply if the Legislature has merely codified a duty existing at common law. Aetna Life & Cas. Co. v. Nelson, 67 N.Y.2d 169, 501 N.Y.S.2d 313, 492 N.E.2d 386, 388 (1986). Additionally, if the Legislature has in a particular context modified the remedies which a court would ordinarily afford in a contract action, the "contract" statute of limitations will be applied, because the substantive rights remain contractual. County of San Diego v. Sanfax Corp., 19 Cal.3d 862, 140 Cal.Rptr. 638, 568 P.2d 363, 370 (1977). These cases show that we must identify the substantive rights at issue, and determine if they arise from contract, common law, or statute. In other words, when § 540 refers to proceedings brought pursuant to that statute is it referring to a liability that pre-exists § 540, or a liability newly created by § 540?
¶ 15 Santa Fe describes itself as the lessee of certain oil and gas leases pertaining to mineral rights possessed by Purcell. Santa Fe's obligation or liability to pay Purcell a royalty existed prior to the effective date of § 540. For example, In re Levy, 185 Okla. 477, 94 P.2d 537 (1939), contains the following:
Depletion of the store of oil or gas under the land, if there be any, commences at the time the oil or gas is reduced to possession by the lessee . . ., at which time delivery of the royalty, or share reserved to the landowner for permitting lessee to explore and reduce to possession, also commences.
Id. 94 P.2d at 539, (citation omitted and emphasis added).
Thus, § 540 did not create a new duty on the part of Santa Fe to pay Purcell a royalty upon production. Nor is it argued that § 540 altered the contractual obligation of Santa Fe to pay Purcell the royalty.[6]
¶ 16 Santa Fe focuses on § 540's requirement to pay 12% interest, and states that it had no express duty under its leases (or contracts) to pay interest, and that the obligation to pay the interest is thus a liability arising from this statute. However, we have recently noted the duty to pay interest on production payments apart from § 540. Heiman *193 v. Atlantic Richfield Co., 1995 OK 19, ¶¶ 14-16, 891 P.2d 1252, 1258. This duty is consistent with 23 O.S.1991 § 6. Interest on underpayment thus must be paid both before and after the effective date of § 540. That statute did not create a new liability on behalf of Santa Fe to pay interest. The post-§ 540 interest is not a new liability unless the § 540 interest is in substance different from its pre-§ 540 nature.
¶ 17 In Fleet v. Sanguine, Ltd., 1993 OK 76, 854 P.2d 892, we explained that prejudgment interest was an item of recovery authorized by § 540. Therein we characterized the § 540 12% rate as a penalty to compel compliance with the section, and we contrasted it to interest that is compensation for the use of money belonging to another. Id. 1993 OK 76, at ¶ 11, 854 P.2d at 899-900.[7] However, that version of § 540 considered in Fleet stated that the 12% rate was imposed "as a penalty." Id. at n. 14, 854 P.2d at 895. We explained that in 1985 the Legislature had removed the phrase "as a penalty" from the statute, and that the 1985 change had no affect upon our opinion therein because the cause of action arose in 1984 before the change. Id.
¶ 18 The Legislature is not presumed to perform vain and useless acts when creating law. Hill v. Board of Education, supra, Bryant v. Commissioner of the Department of Public Safety, supra. The Legislature has now removed the statutory language referring to the 12% rate as a penalty. We thus decline to characterize the 12% rate as a penalty when the Legislature has amended the statute to remove that language.
¶ 19 The 12% interest is based upon a breach of the obligation to pay the royalty arising ex contractu in the manner prescribed by § 540. We have said that only a single cause of action may be predicated upon the same set of facts, but different theories of liability may be argued in support of the cause of action. Fleet, 1993 OK 76, at ¶ 15, 854 P.2d at 901. In Santa Fe's view the contractual cause of action and a statutory liability both arise separately, one from the breach of a contract and the other from non-payment in accordance with § 540. We disagree, and view the 12% interest as part of the contractual claim.
¶ 20 Courts have looked to whether the existence of an agreement is a necessary element of the claim when determining whether the claim is a new substantive liablity under a statute. Travelers Express Co. v. Cory, 664 F.2d 763, 766 (9th Cir.1981); Copitas v. Retail Clerks Intern. Ass'n., 618 F.2d 1370, 1372-1373 (9th Cir.1980). In Gardner v. Basich Bros. Construction Co., 44 Cal.2d 191, 281 P.2d 521, 522 (Cal.1955), the California court explained that a liability created by statute is an obligation which the legislature creates in the absence of an agreement. In that case, a law fixing minimum hauling rates did not create liability, but instead determined only the amount of liability when the agreement was breached. Id. The statutory liability could not be imposed apart from the existence of an agreement or contract.
¶ 21 This theory is at the heart of Purcell's argument that § 540 imposes a form of damages for the breach of the underlying contract (lease). She argued before the trial and appellate courts that when § 540 became effective it was incorporated into and became a part of the leases then existing. In other words, § 540 is contractual liability; i.e., the statute provides a measure of damages in the form of 12% interest for when the contract is breached. There is no doubt that existing law is incorporated into a lease at the time a lease is created. Heiman v. Atlantic Richfield Co., 1995 OK 19, n. 4, 891 P.2d 1252, citing, Buckles v. Wil-Mc Oil Corp., 1978 OK 137, 585 P.2d 1360, 1362. In Gardner, supra, that court pointed out that regulatory rate schedules existing at the time of the contract were a part of that contract because of the public policy at issue. Id. 281 P.2d at 522-523. Nothing is before us on certiorari to challenge the retroactivity of § 540.[8]
¶ 22 In Gardner the existence of a contract was necessary in an action to recover damages calculated in accordance with the rate schedules. In our case today the existence *194 of a lease is necessary in an action to recover damages calculated in accordance with § 540. The application of § 540 to existing leases incorporates the provisions of that statute into the contractual arrangements. Thus, § 540 did not change the substantive liability of Santa Fe, and for the purpose of applying a statute of limitations § 540 is not a statutory liability independent of a contract or agreement between the parties. We affirm the District Court's use of a five-year statute of limitations for Purcell's claim as to interest as well as royalty payments.

III
¶ 23 The opinion of the Court of Civil Appeals is vacated in such part so as to be consistent with this opinion. The judgment of the District Court of Canadian County is affirmed in part and reversed in part. The cause is remanded to that Court for further proceedings consistent with this opinion.
¶ 24 KAUGER, C.J., and SUMMERS, V.C.J., and HODGES, LAVENDER, OPALA, ALMA WILSON and WATT, JJ., concur.
¶ 25 SIMMS, J., concurs in judgment.
¶ 26 HARGRAVE, J. concurs in part and dissents in part.
NOTES
[1] This issue relates to whether § 540 applied to leases executed prior to its enactment. Section 540 was not applied retroactively in certain circumstances. Teel v. Public Service Co. of Oklahoma, 1985 OK 112, ¶ 25, 767 P.2d 391, 399. See Hull v. Sun Refining and Marketing Co., 1989 OK 168, ¶ 12, 789 P.2d 1272, 1278, and its explanation of Teel. In other circumstances § 540 was held not to impair existing constitutional rights, and was applied retroactively. Seal v. Corporation Com'n., 1986 OK 34, ¶ 36, n. 37, 725 P.2d 278, 290-291, 294-295, appeal dismissed sub nom., Amerada Hess Corp. v. Corporation Com'n., 479 U.S. 1073, 107 S.Ct. 1265, 94 L.Ed.2d 126 (1987). In this case the Court of Civil Appeals relied upon Seal, and concluded that § 540 applied to the leases because parties to a lease could not have reasonably expected that their contractual rights were immune from alteration by subsequent state regulation. The retroactivity of § 540 to pre-existing leases has not been made an issue by Santa Fe on certiorari. We are thus not called upon to elaborate on Seal, supra. The determination by the Court of Civil Appeals that § 540 applies to this controversy remains a part of the law of this case.
[2] This case was resolved in the trial court by three partial summary judgment phases. Ordinarily the briefs used on appeal would be those used by the trial court. Okla.Sup.Ct.R. 1.36. However, this procedure does not apply herein because the final motion for partial summary judgment was filed prior to October 1, 1993. Id. at 1.36(a).
[3] Santa Fe does not actually advance an argument here that § 95 (Fourth) applies. It urges the three-year period set by § 95 (Second).
[4] The 1991 version of § 95 was in effect when the action was filed February 26, 1992. Amendments to § 95 either before that date or subsequent thereto are not at issue in this case.
[5] In 1992 § 540 was amended and re-codified at 52 O.S.Supp.1992 § 570.10. 1992 Okla.Sess. Laws c. 190, §§ 10, 28. The effective date for the amended version was July 1, 1993. Id. at § 31. No express effective date was expressly stated for the re-codification. Id. at §§ 30, 31.
[6] Section 540 did alter certain common law provisions. See Hull v. Sun Refining and Marketing Co., 1989 OK 168, 789 P.2d 1272, where we explained that a common law custom and usage relating to required execution of division orders prior to payment of royalties did not survive the enactment of § 540. Id. 1989 OK 168, at ¶ 15, 789 P.2d at 1279. But that alteration is not relevant to Santa Fe's argument herein.
[7] See Shanbour v. Phillips 66 Natural Gas Co., 1993 OK 128, ¶ 5, 864 P.2d 815, 817, where we explained that interest for the detention of payment is a type of damages, as opposed to the imposition of interest pursuant to contract.
[8] See note 1 supra.