Filed 2/3/16  Sidenberg v. Santa Monica Rent Control Bd. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| DEBORAH SIDENBERG et al., | B260290 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BS139207) |
| v. | |
| SANTA MONICA RENT CONTROL BOARD, | |
| Defendant and Respondent, | |

APPEAL from the judgment of the Superior Court of Los Angeles County. Frederick C. Shaller, Judge.  Affirmed.

Rosario Perry for Plaintiffs and Appellants.

J. Stephen Lewis and Rebecca F. Sherman for Defendant and Respondent.

\* \* \* \* \* \* \* \* \* \*

Plaintiffs and appellants Deborah Sidenberg and Robert Sidenberg appeal from the entry of judgment in favor of defendant and respondent Santa Monica Rent Control Board (Board), following the Board's successful motion for summary judgment. We conclude judgment was properly entered in favor of the Board on the ground that plaintiffs' action is time-barred. We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs, a married couple, are the current owners of a 10-unit apartment building located on 12th Street in the city of Santa Monica (the property). Plaintiffs' predecessors in interest were Archie and Jessie Hughes, plaintiff Deborah Sidenberg's parents, from whom she inherited the property.

In the January 17, 1994 Northridge earthquake, numerous buildings throughout Santa Monica suffered damage, many of which were covered by Santa Monica's rent control ordinance. In response to the widespread damage to a significant number of the city's rental units, the Board adopted municipal Regulation 5017 that provided a streamlined process for property owners to repair and/or rebuild their rent-controlled properties and return them expeditiously to the rental market.

In 1994, plaintiffs' parents owned the property which was subject to rent control. After the property sustained damage in the earthquake, Mr. and Mrs. Hughes applied to the Board for approval to repair the property pursuant to Regulation 5017. The Board granted the Hughes' application (No. 328R-DQ) to temporarily remove their rent-controlled units from the rental market for purposes of repairing the building, subject to the condition that they enter into a Removal Permit Agreement with the Board in accordance with Regulation 5017.

As relevant here, the Removal Permit Agreement contained the following terms: (1) the agreement was entered into on November 10, 1994 and was "effective on that date"; (2) two apartments, Units No. 3 and 4, would be rent-restricted for low-income tenants, regardless of vacancy and turnover; (3) the remaining units could be initially rented at market levels after completion of repairs, but would thereafter remain subject to rent control; (4) Mr. and Mrs. Hughes would execute a declaration of deed restrictions to

2

be recorded against the property reflecting the rent-restrictions for Units No. 3 and 4, and the deed restrictions would "remain in effect for the life of the repaired/reconstructed building"; (5) all provisions of the agreement were to remain in effect "for the life of the repaired or reconstructed building"; and (6) the provisions of the agreement were to be binding on transferees and successors in interest.

The declaration of deed restrictions was recorded against the property on May 30, 1995.

At some point thereafter, the property was repaired and the 10 units reoccupied by tenants in accordance with the terms of the Removal Permit Agreement. No challenge was raised to the permit conditions imposed by the Board for the removal of the property from the rental market to effectuate the repairs and to re-let the premises.

In 1995, the Legislature passed the Costa-Hawkins Rental Housing Act (Civ. Code, §§ 1954.50-1954.535; hereafter the Costa-Hawkins Act) which generally exempts from local rent control laws residential units constructed after 1995, and institutes vacancy decontrol for most other residential units covered by rent control. The Costa Hawkins Act took effect January 1, 1996. (Stats. 1995, ch. 331, § 1, p. 1820.)

At a date not specified in the record, plaintiffs became the successor owners of the property.

Apparently in early 2012, the tenant living in Unit No. 3 of plaintiffs' building voluntarily vacated the apartment. Plaintiffs wanted to lease the apartment at a market rate without regard to the recorded deed restriction in light of the provisions of the Costa-Hawkins Act. Plaintiffs allege they filed "a Claim" with the Board on July 12, 2012 which was denied. No other details about plaintiffs' claim to the Board are alleged.

On September 21, 2012, plaintiffs filed this action against the Board, initially styled as a petition for writ of mandamus. Later, the writ allegations were dropped. Plaintiffs' operative second amended complaint stated claims for rescission, declaratory relief, injunctive relief, quiet title, and slander of title. The second amended complaint alleged that plaintiffs "have never attempted to set the deed restriction aside or complain about it since its initial implementation in 1994 because they have never been eligible for

3

a rent increase under the Costa-Hawkins Act. [Plaintiffs] only now for the first time seek to enforce their rights under the Costa-Hawkins Act and establish the initial rental rate for the vacant deed restricted units."

The Board moved for summary judgment on the second amended complaint, contending, among other arguments, that plaintiffs' entire action was time-barred pursuant to the three-year statute of limitation set forth in Code of Civil Procedure section 338, subdivision (a) (hereafter section 338(a)). The trial court granted judgment in favor of the Board, including on the grounds the action was time-barred. Notice of entry of judgment in favor of the Board was served September 29, 2014.

This timely appeal followed.

## DISCUSSION

Plaintiff's first argument is that the language in Civil Code section 1954.53, subdivision (d)(1) to the effect that "[n]othing in this section shall be construed to impair the obligations of contracts entered into prior to January 1, 1996" does not apply to the entirety of the Costa-Hawkins Act. Rather, plaintiffs argue, the vacancy decontrol provisions apply to the property, irrespective of the terms of the 1994 Removal Permit Agreement and the language in subdivision (d)(1). Second, plaintiffs contend their action seeks to quiet title and is not time-barred by section 338(a) or any other statute of repose. Finally, plaintiffs contend the trial court abused its discretion in denying them leave to amend their declaratory relief cause of action.

"We independently review an order granting summary judgment. [Citation.] We determine whether the court's ruling was correct, not its reasons or rationale. [Citation.] 'In practical effect, we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment.' [Citation.]" (*Shugart v. Regents of University of California* (2011) 199 Cal.App.4th 499, 504-505.)

Although the record does not include the moving or opposing separate statements of undisputed facts, it appears from the parties' briefs on appeal that the material facts related to the time-bar issue are undisputed. Since we find the time-bar issue dispositive

4

of the appeal, we do not address plaintiffs' arguments as to whether the substantive provisions of the Costa-Hawkins Act apply to the property.

The Board, primarily relying on *Travis v. County of Santa Cruz* (2004) 33 Cal.4th 757 (*Travis*), successfully argued below that the three-year statute of limitation in section 338(a) applied and barred plaintiffs' action in its entirety.

Section 338(a) establishes a three-year statute of limitation for an action founded "upon a liability created by statute, other than a penalty or forfeiture." "An obligation is 'a liability created by statute' within the meaning of . . . section 338, '[w]here a statutory scheme has been adopted that gives rise to newly created rights' [citation], if the liability was created by law in the absence of an agreement [citation], or if the duty is fixed by the statute itself [citation]." (*County Sanitation Dist. v. Superior Court* (1990) 218 Cal.App.3d 98, 106-107 [finding that section 338(a) applies to a liability created by an ordinance because it has "the same force within its jurisdictional limits as a statute"]; accord, *Aubry v. Goldhor* (1988) 201 Cal.App.3d 399, 404 [" 'An obligation is created by statute if the liability would not exist but for the statute.' "].)

The Board argues that plaintiffs' action is founded upon the rights created by the Costa-Hawkins Act, specifically the vacancy decontrol provisions. The Board argues that *Travis* required plaintiffs to bring their action within three years of the effective date of the Costa-Hawkins Act, or no later than January 1, 1999. Because plaintiffs' action was *not* filed until September 21, 2012, almost 13 years too late, the Board contends the entire action was properly found to be time-barred and summary judgment granted accordingly.

Plaintiffs argue that *Travis* is distinguishable on the facts and that section 338(a) does not apply because their action is not an action founded upon a liability created by statute. Rather, they argue, the gravamen of their action is the right to use and enjoy their property "free of invalid deed restrictions." Plaintiffs contend they are not challenging the Board's Regulation 5017 or seeking to enforce statutory rights under the Costa-Hawkins Act, but are "merely" seeking to quiet title and obtain removal of the invalid deed restrictions. As such, they argue there is no time-bar because the statute of

limitation on a cause of action for quiet title does not run against an owner in possession, and an owner is properly deemed to be in possession through his or her tenants. (See *Salazar v. Thomas* (2015) 236 Cal.App.4th 467, 477-482.)

"To determine the statute of limitations which applies to a cause of action it is necessary to identify the nature of the cause of action, i.e., the 'gravamen' of the cause of action. [Citations.] '[T]*he nature of the right sued upon and not the form of action nor the relief demanded determines the applicability of the statute of limitations under our code*.' [Citation.]" (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 22-23, italics added.)

In our view, the gravamen of plaintiffs' action is that the passage of the Costa-Hawkins Act in 1996 rendered the deed restrictions recorded in 1995 void and unenforceable and the deed restrictions therefore should be removed from the record title to the property. Indeed, plaintiffs concede this point in their opening brief at page 16: "[T]he gravamen of [plaintiffs'] Second Amended Complaint is that the deed restrictions are invalid because they violate state law, namely Costa-Hawkins." Each of the causes of action in their operative pleading, no matter how the claims are characterized, is premised on the preemptive effect of the Costa-Hawkins Act and that the continued existence of the deed restrictions is *abridging plaintiffs' rights as property owners to set rental rates at the property under the vacancy decontrol provisions of that statute*.

Plaintiffs' allegations throughout their operative pleading confirm this inescapable fact. "[T]he deed restrictions recorded pursuant to Regulation 5017 are preempted by state law, and the Board's attempted enforcement of these recorded deed restrictions [*sic*] laws is illegal." (Par. 2, p. 3.) "[Plaintiffs] request that this Court decide that the deed restrictions and the Removal Permit Agreements are unenforceable, ultra vires, invalid and void." (Par. 7, pp. 4-5.) "[T]he full decontrol Costa-Hawkins Act was established effective January 1, 1999, thereby invalidating the deed restriction as to each owner who wished said deed restriction removed." (Par. 23, p. 8.) "[T]he [Removal Permit] agreement is unlawful because it is directly contrary to and pre-empted by Costa-Hawkins state law." (Par. 43, p. 11.) The Board's "actions are in conflict with the State Law at Civil Code Sections 1954.50-1954.53 (the Costa-Hawkins Act) because the

6

purpose of that Law was to preempt and prohibit local rent control agencies from controlling the lawful rent levels between vacancies." (Par. 47, p.11.) The Board "has imposed the deed restriction on the subject property to deny [plaintiffs] their right to establish new initial rent levels without limitation pursuant to State Law." (Par. 52, p. 12.) "[T]he deed restriction is preempted by the Costa-Hawkins Act." (Par. 64, p. 14.)

Accordingly, we conclude *Travis* is controlling, and compels the conclusion that plaintiffs' action is time-barred under section 338(a).

In *Travis*, the owners of two residential properties (Travis and the Sokolows) had sought building permits from the County of Santa Cruz to construct a second dwelling unit on their respective properties, filed a petition for writ of mandate against the county in September 1999. (*Travis*, *supra*, 33 Cal.4th at pp. 763-764.) The writ sought to enjoin enforcement of a county ordinance, adopted in 1981, that imposed rent and occupancy restrictions on second dwelling units constructed on residential properties, and mandated the recording of a declaration, binding on successors, that the restrictions would be observed. The writ also sought removal of the conditions imposed on their respective building permits in accordance with the ordinance. The property owners contended the ordinance, and any permit conditions imposed pursuant thereto, were preempted by the Costa-Hawkins Act and therefore void. (*Ibid*.) The county successfully argued in the lower courts that the writ was untimely. (*Id*. at p. 765.)

The Supreme Court determined that two separate statutes of limitation were relevant to the claims raised: the 90-day statute set forth in Government Code section 65009, and the three-year statute at Code of Civil Procedure section 338(a). (*Travis*, *supra*, 33 Cal.4th at pp. 762-763.)

*Travis* first discussed that portion of the writ challenging the imposition of the conditions imposed on the property owners' building permits. The court found that the 90-day statute set forth at Government Code section 65009 pertaining to actions challenging local governmental decisions applied. (Gov. Code, § 65009, subd. (c)(1)(E).) Because one property owner (Travis) had timely challenged the permit conditions by administrative appeal and the writ had been filed within 90 days of the denial of the

7

administrative appeal, Travis's claim was timely. (*Travis*, *supra*, 33 Cal.4th at pp. 764, 767-771.) The other property owners (the Sokolows) who had not filed an administrative appeal challenging the permit conditions and had waited some 11 months from issuance of the permit before bringing the writ, could not challenge the permit conditions on any ground. (*Ibid*.)

The Supreme Court then discussed the other claims raised in the writ, including the property owners' contention that the county ordinance had been preempted by the Costa-Hawkins Act and the county was under a duty to amend the ordinance or cease enforcing it. The Supreme Court determined that a challenge to the county ordinance on the grounds that it had been preempted by a *later-enacted* state statute was subject to the three-year statute of section 338(a). (*Travis*, *supra*, 33 Cal.4th at p. 772.) The court went on to conclude that "[a]ssuming the Costa-Hawkins Act subjects the County to a duty to repeal or amend the Ordinance to conform to state law, that duty first arose—and was first violated by the County's inaction—when the Costa-Hawkins Act became effective." (*Id*. at p. 773.) Because the property owners had not filed their petition within three years of the effective date of the Costa-Hawkins Act, the petition was untimely. (*Ibid*.)

*Travis* explained that "the conflict plaintiffs perceive between the Costa-Hawkins Act, which mandated immediate exemption of new units and eventual vacancy decontrol on all units, and the Ordinance, which restricted indefinitely rents on newly constructed second units, if it ever existed, existed as of the effective of the Costa-Hawkins Act, January 1, 1996. If, as claimed, the County has, and is violating a duty to repeal or amend the Ordinance to avoid a conflict with the state law, it had, and violated, that duty as of the day the state law came into effect. Plaintiffs' action to enforce a statutory obligation thus accrued on January 1, 1996; under Code of Civil Procedure section 338, they had three years from that date to bring it." (*Travis*, *supra*, 33 Cal.4th at p. 773.)

Plaintiffs argue that *Travis* is inapplicable in part because there has never been a contention here that the 90-day statute set forth in Government Code section 65009 is applicable. However, nothing in the *Travis* court's discussion of the 90-day statute renders its separate analysis of section 338(a) inapplicable to the facts here.

8

Plaintiffs also urge that they, unlike the property owners in *Travis*, are not seeking to compel the Board to amend or repeal Regulation 5017 to conform to state law, and therefore they are not asserting a right or liability founded upon a statute. However, as we have already concluded, the essence of plaintiffs' claim is the alleged abridgment of their rights as property owners under the Costa-Hawkins Act to set rental rates upon vacancy. They seek to compel the removal of the deed restrictions and enjoin the Board from enforcing them. Their action is founded upon a liability created by statute within the meaning of section 338(a). (*County Sanitation Dist. v. Superior Court*, *supra*, 218 Cal.App.3d at pp. 106-107; *Aubry v. Goldhor*, *supra*, 201 Cal.App.3d at p. 404.)

Plaintiffs argue that even if section 338(a) applies, the statute did not begin to run on the date the Costa-Hawkins Act became effective, but rather, on the date of the first vacancy at the property in 2012 which was the first time they were entitled to assert their rights under the Costa-Hawkins Act. Plaintiffs' argument for accrual of their claims as running from the date of the first vacancy of one of the deed-restricted units is foreclosed by *Travis*. If the deed restrictions are invalid because of the Costa-Hawkins Act, that invalidity existed as of the effective date of the statute, January 1, 1996. (*Travis*, *supra*, 33 Cal.4th at p. 773.)

Plaintiffs' argument they did not suffer any injury until the vacancy of unit No. 3 in 2012 is belied by plaintiffs' allegations that they were *injured at the time of the recording of the deed restriction in 1995* because it "directly impaired the vendibility of the property on the open market and resulted in loss of rental income the date of recording. The aforementioned recording depreciated the market value and prevented [plaintiffs] from enjoying the use of the property and premises in the manner" most beneficial to plaintiffs as property owners. (Par. 76, pp. 15-16.) (See, e.g., *Garver v. Brace* (1996) 47 Cal.App.4th 995, 999-1000 ["Any 'manifest and palpable' injury will commence the statutory period"].)

Further, plaintiffs cannot escape the essential nature of their allegations. Their pleading simply does not set up a claim for quiet title. There are no allegations supporting a finding that the Board is in any way asserting a right to possession of, or title

9

to, the property.  And, even assuming, for the sake of argument, plaintiffs' allegations support a claim for slander of title or to cancel a void instrument, their claims would still be time-barred.  As pled, those theories still hinge on the enactment of the Costa-Hawkins Act as the basis for the invalidity of the deed restrictions and would therefore accrue upon the effective date of the statute.  A cause of action for slander of title is governed by the three-year statute of limitation at subdivision (g) of section 338 of the Code of Civil Procedure, and a cause of action to cancel a void instrument is subject to the four-year statute of section 343.  (*Moss v. Moss* (1942) 20 Cal.2d 640, 644-645; accord, *Marin Healthcare Dist. v. Sutter Health* (2002) 103 Cal.App.4th 861, 878-880; *Zakaessian v. Zakaessian* (1945) 70 Cal.App.2d 721, 725.)

As for plaintiffs' contention they were denied leave to amend their declaratory relief cause of action, they have not shown the trial court abused its discretion.  At the hearing on the summary judgment motion, plaintiffs made an oral motion to amend only the declaratory relief cause of action.  In so arguing, plaintiffs did not articulate any new facts that could be pled to defeat the time-bar.  Plaintiffs only asserted that a *new theory* could be stated supporting a request for a declaration of rights and obligations of the parties relative to paragraph 30 of the Removal Permit Agreement, including the penalties to be faced by plaintiffs in the event they violated or sought to terminate the agreement.  This theory was not embraced by the allegations in the second amended complaint.  " '[A] plaintiff wishing "to rely upon unpleaded theories to defeat summary judgment" must move to amend the complaint before the hearing.' [Citation.]" (*Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1275.)  Plaintiffs have not shown that the trial court abused its discretion in denying their oral request for leave to amend.

### DISPOSITION

The judgment is affirmed.  Defendant and respondent shall recover costs on appeal.

GRIMES, J.

WE CONCUR:

BIGELOW, P. J.                    RUBIN, J.

10